On a good day, the task of chasing criminals and detecting crime is challenging and tedious. On a bad day it is frustrating and dangerous. Therefore, I dissent in this "drug" case with the knowledge that the answer to the question raised is equally important to both police officers and their natural adversaries, defendants on trial. They both seek justice under the law. They differ on what that means.
While the outcome of this particular litigation has already been concluded with the completion of a prison sentence, I must respectfully dissent. I disagree with the majority in one key respect. The defendant states his conviction was procured by outrageous government conduct; and not too surprisingly, the State of Ohio disagrees. The trial court prohibited the question from being explored by the jury and I believe that was wrong.
Simply stated, the law enforcement officers in this investigation recruited the services of a petty thief and burglar and offered him a "deal" which would eventually give him a free ride for his criminal activity. In return for his services as a "drug customer," the law enforcement community arranged for the felony charges pending against him, for theft and breaking and entering, to vanish. All he had to do in return was to recruit other young people who would sell him drugs.
It is important to note that when the young thief agreed to become a "buyer" for the police, he provided them with a list of people he "thought" he might be able to buy from. Not people from whom he had bought in the past, but people he "thought" might be drug dealers in the Portage County area in the future. And thus he set out, armed with public funds, in search of someone to buy drugs from. Appellant Plough was one of his first targets. The record is clear that the police "buyer" and appellant had no history of transactions of any kind up until that moment.
The United States Supreme Court has unequivocally stated that when governmental misconduct crosses the line into "outrageous" conduct, any conviction which results must be reversed. In Rochin v. California
(1952), 342 U.S. 165, the court, in reversing Rochin's conviction, stated that "[a]pplying [the] general considerations [of due process] to the circumstances of the present case, we are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting [sic] crime too energetically. This is conduct that shocks the conscience."
Id. at 172.
If government conduct in an undercover operation is so outrageous that it shocks the conscience, the government is barred from obtaining a conviction. United States v. Russell (1973), 411 U.S. 423. The factors to consider in determining whether the conduct is outrageous are the need for the government conduct, whether the criminal enterprise preexisted the undercover investigation, whether the government agent directed or controlled the enterprise, and the impact of law enforcement activity on the commission of the crime. U.S. v. Payne (6th Cir. 1992), 962 F.2d 1228,1231-1232, cert. denied, 113 S.Ct. 811.
Any inquiry into whether or not the government has crossed the elusive line between outrageous conduct and good police work is hampered by the similarities it must, by definition, share with the prohibited conduct of entrapment, which is an affirmative defense that is submitted to the jury for resolution.
At a minimum it is arguable whether or not the state needed to recruit a "buyer" in order to build a case against this particular defendant. And it is clearly a question of fact whether or not his criminal activity preceded this criminal arrangement. What, if any, impact the government's activities had on the commission of the crime clearly would require a review of the facts of this particular case. Are we to presume there would have been a sale if there had been no government involvement? We do not know, and that is a problem. Significantly, in its judgment entry of sentence, the trial court found that "all of the sales in these cases were to undercover agents." Absent government involvement, at least as far as this record is concerned, there was no criminal conduct demonstrated.
Thus, it is readily apparent that both the legal justification and the review would be superficial at best and constitutionally flawed. In the subject litigation, the defendant requested that this weighing exercise be entrusted to the jury. They were the only persons who were qualified to weigh facts. It is legally impermissible for a trial court to weigh facts in the middle of a jury trial.
Simply stated, if the government's conduct was "outrageous" the conviction must be reversed. If, on the other hand, it was merely aggressive and permissible police work, then the conviction was justified. Either way, it is a factual question, and it was error for anyone other than the jury to weigh those particular facts.
 ______________________________________ JUDGE WILLIAM M. O'NEILL